IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CRISPIN SAAVEDRA, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-10-0856 |
| | § | |
| JAMES E. Richard, JR. AND | § | |
| LAURA Richard, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

The above referenced action, alleging that Plaintiffs were inadequately paid by Defendants for construction work on their vacation property in the State of Washington in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a)(1), 207(a), 211(c) and 215(a)(2), as well as claims of breach of contract and quantum meruit, was removed from the 129th District Court of Harris County, Texas.  Pending before the Court are the following motions:

(1)  Plaintiffs Crispen Saavedra, Bulprano Castillejos, Aaron Rivera, and Jaime Montoya's motion for summary judgment (instrument #15);

(2) Defendants Laura and James Richard's motion for summary judgment for *res judicata* (#32);

(3) Plaintiffs' motion to strike Defendants' First Amended Answer to Plaintiffs' Amended Petition for failure to ask for leave to amend (#37);

-1-

(4) Plaintiffs' motion for leave to amend First Amended Complaint (#38);

(5) Plaintiffs' motion for leave to file supplemental response to Defendants' motion for summary judgment (#40);

(6) Defendants' motion for leave to amend first amended answer (#46);

(7) Plaintiffs' motion to strike Defendants' amended affidavit in response to Plaintiffs' motion for summary judgment (#50); and

(8) Plaintiffs' motion for sanctions for failure to obey court order (#52) to produce all non-privileged documents responsive to discovery requests.

All parties are residents of Texas.

Defendants' original attorney was granted leave to withdraw (#36) on October 14, 2010, and Defendants have been proceeding *pro se*, although James E. Richard, Jr. is listed as an attorney and member of the Texas Bar.[1]

## I.  Standards of Review

### A.  *Federal Rule of Civil Procedure 56(c)*

---

[1] The general rule is that courts must construe the pleadings of *pro se* litigants liberally as they are held to less stringent standards than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007).  In this case however, because Richard is a licensed attorney, the Court does not find such deference necessary.

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'"  *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if

it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).   Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).   Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).   "'[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.'" *Lawrence v. Univ. of Texas Medical Branch*, 163 F.3d 309, 313 (5th Cir. 1999), *quoting Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).   Nor are pleadings competent summary judgment evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).

A district court may not make credibility determinations or weigh evidence when deciding a summary judgment motion. *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009), *citing EEOC v. R.J.*

*Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999).  Nor does the court have to sift through the record in search of evidence to support opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

While a failure to state a claim is usually challenged by a motion for dismissal under Rule 12(b)(6), it may also constitute the basis for a summary judgment under Rule 56 because "the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact." *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992).  In such circumstances, the motion for summary judgment challenging the sufficiency of the complaint will be "evaluated much the same as a 12(b)(6) motion to dismiss." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).  A motion for summary judgment should be granted if, accepting all well-plead facts as true and viewing them in the light most favorable to the plaintiff, the court finds that the plaintiff's complaint nonetheless fails to state a claim.  *Id.*

**B.  *Federal Rule of Civil Procedure 15(a)***

Federal Rule of Civil Procedure 15(a) provides in relevant part,

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of

court or by written consent of the adverse party; and
leave shall be freely given when justice so requires.

A court has discretion in deciding whether to grant leave to amend.
*Foman v. Davis*, 371 U.S. 178, 181 (1962). Since the language of the
rule "'evinces a bias in favor of granting leave to amend," the
court must find a "substantial reason" to deny such a request.
*Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins.
Co.*, Civ. A. No. H-05-4389, 2006 WL 2521411, *3 (S.C. Tex. Aug. 29,
2006), *quoting Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir.
2004), and *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420,
425 (5th Cir. 2004). Factors for the court to consider in
determining whether a substantial reason to deny a motion for leave
to amend include "undue delay, bad faith or dilatory motive on the
part of the movant, repeated failure to cure deficiencies by
amendments previously allowed, undue prejudice to the opposing
party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3
F.3d 137, 139 (5th Cir. 1993).

While Rule 15(a) does not establish a time limit for filing a
motion for leave to amend, "'at some point, time delay on the part
of a plaintiff can be procedurally fatal.'" *Smith v. EMC Corp.*,
393 F.3d at 595, *quoting Whitaker v. City of Houston*, 963 F.2d 831,
836 (5th Cir. 1992), *in turn quoting Gregory v. Mitchell*, 634 F.2d
199, 203 (5th Cir. 1981). If there is substantial delay, the
plaintiff bears the burden of demonstrating that it was due to
oversight, inadvertence or excusable neglect, *Id.*, *citing Gregory*,

634 F.2d 203.

## C. *Federal Rule of Civil Procedure 56(c)(4)*

Under Federal Rule of Civil Procedure 56(c)(4),[2] "an affidavit
or declaration used to support or oppose a motion must be made on
personal knowledge, set out facts that would be admissible in
evidence, and show that the affiant or declarant is competent to
testify on the matters stated."[3]  Obviously a vague affidavit or
one based on inadmissible hearsay cannot raise a genuine issue of
material fact.  An affidavit that does not measure up to the
standards of Rule 56(c)(4) is subject to a timely motion to
strike."  *Auto Drive-Away Co. of Hialeah v. Interstate Commerce
Comm'n*, 360 F.2d 446, 448-49 (5th Cir. 1966).  *See also Fralick v.
Plumbers and Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D,
2010 WL 2563429, *3 (N.D. Tex. June 22, 2010)("The Fifth Circuit
has endorsed the use of a motion to strike to challenge evidence
supporting or opposing a motion for summary judgment.").  "On a
motion for summary judgment, the district court should disregard
only those portions of an affidavit that are inadequate and
consider the rest."  *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 531 (5th

---

[2] This provision was previously included in Rule 56(e)(1).

[3] Under Federal of Evidence 602, a witness is not competent to
testify to a matter "unless evidence is introduced sufficient to
support a finding that the witness has personal knowledge of the
matter."

Cir. 1992).

**D.  *Federal Rule of Civil Procedure 37(b)(2)(A)***

Rule 37(b)(2)(A) in relevant part addresses sanctions

*For Not Obeying a Discovery Order*.  If a party . . .
fails to obey an order to provide or permit discovery,
including an order under Rule 26(f), 35, or 37(a), the
court where the action is pending may issue further just
orders,  They may include the following:
(i) directing that the matters embraced in the order or
other designated facts be taken as established for
purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or
opposing designated claims or defenses, or from
introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is
obeyed;
(v) dismissing the action or proceeding in whole or in
part;
(vi) rendering a default judgment against the disobedient
party; or
(vii) treating as contempt of court the failure to obey
any order except an order to submit to a physical or
mental examination.

**E.  *Doctrine of Res Judicata***

After a final judgment on the merits of a prior suit is

entered, the parties and those in privity with them may not re-

litigate issues that either were or could have been brought in that

suit.  *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir.

2009).  Four elements must be satisfied for a claim to be barred by

the doctrine of *res judicata*: (1) the parties must be identical in

both suits; (2) the prior judgment must have been rendered by a

court of competent jurisdiction; (3) there must have been a final

judgment on the merits; and (4) the same claim or cause of action

-8-

must be litigated in both cases.  *Id.*  To determine the fourth element, the Fifth Circuit applies the "transactional test," which requires that both actions be based on the "same nucleus of operative fact."  *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994).  If the four elements of *res judicata* are satisfied, a party is barred "from raising any claim or defense in the latter action that was or could have been raised in support of or in the opposition to the cause of action asserted in the prior action."  *Id.*

The *res judicata* effect of a prior judgment is a question of law.  *Oreck*, 560 F.3d at 401, *citing Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004).  The doctrine serves to "insure[] the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits."  *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir, 1994).

If a party can only win the second suit by convincing the court that the prior judgment was wrong, the second suit is barred by *res judicata*.  *Test Masers Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 20050, *citing New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000).  *See also Frank C. Minvielle LLC v. Atlantic Refining Co.*, 337 Fed. Appx. 429, 433 (5th Cir. July 24, 2009), *cert. denied*, 130 S. Ct. 1284 (2010)(If the parties against whom the judgment was rendered did not appeal, the judgment becomes final even if it is wrong), *citing Federated Dep't*

-9-

*Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.").

**F.  *Striking under Federal Rules of Civil Procedure 8(a) and 12(f)***

Federal Rule of Civil Procedure 8, establishing the minimum pleading standards, requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Civ. P. 8(a)(2).  The purpose of the rule is to provide the opposing party with "fair notice of what the claim is and the ground upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). While Rule 8(a)(2) does not require "'detailed factual allegations,' it demands more that 'labels and conclusions.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] formulaic recitation of the elements of a cause of action will not do.'" *Id., quoting Twombly*, 550 U.S. at 555.  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 12, *citing Twombly*, 550 U.S. at 555.  The pleader must "state a claim for relief that is plausible on its face" by asserting "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, *citing Twombly*, 550 U.S. at 556.

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."  Motions to strike are generally disfavored and infrequently granted because striking parts of pleadings is a drastic remedy and one often sought by a movant as means to delay.  *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1058 (5th Cir. 1982); *FDIC v. Niblo*, 821 F. Supp. 411, 449 (N.D. Tex. 1993)("In order to succeed on a motion to strike surplus matter from an answer, it must be shown that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as  a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.  The court must deny a motion to strike if there is any question of fact or law."); *Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.*, No. 1:08CV1394, 2010 WL 1141133, *5 (S.D. Miss. Mar. 19, 2010).

Rule 7(a) identifies what filings are "pleadings":  "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-

party answer, if the third-party complaint is served."

## II. FLSA

The FSLA allows employees to bring suit against their employer for unpaid minimum wages and unpaid overtime compensation, in addition to liquidated damages, attorney's fees, and court costs. *Lilani v. Noorali*, Civ. A. No. H-09-2617, 2001 WL 13667, *8 (S.D. Tex. Jan. 3, 2001), *citing* 29 U.S.C. §§ 206(a), 207(a), and 216(b). Section 206(a)(1) mandates that certain employers pay covered employees a minimum wage of $7.25 per hour. *Id.* Section 207(a)(1) provides in relevant part that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee received compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate[4] at which he is employed." To prevail on a FLSA claim for unpaid minimum wages or overtime, a plaintiff must demonstrate by a preponderance of the evidence (1) the existence of an employment relationship, (2) that the employee was engaged in commerce or employed by an enterprise engaged in commerce, (3) that defendants failed to pay the employee the minimum wages or overtime required by the statute, and (4) that the employee is owed the

---

[4] The statute defines "regular rate" of pay as the hourly rate actually paid the employee for "all remuneration for employment." 29 U.S.C. § 207(e). *See also Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42 (1944); *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948)("The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments.").

amount claimed by a just and reasonable inference. *Id., citing* §§ 206-07, and *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 441 (5th Cir. 2005).

Although the Fifth Circuit has not determined whether the FLSA preempts state-law claims that are based on a right conferred by the FLSA, district courts within the Circuit have concluded that such claims, when predicated on violations of the FLSA, including breach of contract, unjust enrichment and quantum meruit, are preempted. *Lilani*, 2001 WL 13667, at *7, *citing Guerrero v. J.P.Morgan Chase & Co.*, 2010 WL 457144, *3-4 (E.D. Tex. Feb. 5, 2010); *Botello v. COI Telecom, LLC*, 2010 WL 3784202, *4 (W.D. Tex. Sept. 21, 2010). *See also Glanville v. Dupar, Inc.*, 727 F. Supp. 2d 596 (S.D. Tex. 2010).

A common issue in FLSA cases is whether the worker is an employee, covered by the statute, or an independent contractor, not covered by the statute. The status of a worker is a "fact dependent" determination, although the ultimate conclusion that an individual is an employee within the meaning of the statute is a legal conclusion. *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993)(holding that a group of contractors were independent contractors); *Crownwell v. Driftwood Electrical Contractors*, 348 Fed. Appx. 57, 59 (5th Cir. Oct. 12, 2009). In *Carrell*, the Fifth Circuit examined whether a group of welders suing the gas pipeline construction company that had retained them

for overtime compensation qualified as "employees" under FSLA or were independent contractors.  The panel opined that in determining employee status under the FLSA, the focus is on whether the individual, "as a matter of economic reality, is economically dependent upon the business to which he renders his service," or "in business for himself."  998 F.2d at 332.  It identified five factors to be considered under an "economic reality test"[5]:  "the degree of control exercised by the alleged employer, the extent of the relative investments of the worker and alleged employer, the degree to which the worker's opportunity for profit and loss is determined by the alleged employer, the skill and initiative required to perform the job, and the permanency of the relationship."  *Id.*  The panel noted that "[t]hese factors are merely aids" and that "no single factor is determinative." Regarding the permanency of the relationship, the appellate court examined whether the welders worked exclusively for the alleged employer or moved from job to job (project to project) throughout the construction season.  *Id.*  Relating to degree of control, the panel asked who assigned the work, maintained daily time records

---

[5] The economic reality test to determine whether a defendant was an employer within the meaning of the FLSA was adopted in *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990), in which the appellate court examined whether the alleged employer "(1) ha[d] the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  No single factor is dispositive.

-14-

for each, directed the time to be spent on an assignment, and controlled the schedule. *Id.* at 333. Regarding relative investments of the employer and the worker, the court looked at who supplied the trucks, the welding machines and other specialized tools, paid the costs of operating, repairing and maintaining the equipment, provided lodging and meals, and provided insurance. *Id.* at 333. As to the worker's opportunity for profit and loss, the panel looked to see if the welders classified themselves as self-employed on their income tax returns and whether they consistently found welding work with other companies and were able to control their own costs. *Id.* at 333-34.

### III.  Plaintiffs' Factual Allegations

Plaintiffs, who are Texas residents, are construction laborers who were hired by Defendant James E. Richard, Jr. ("Richard") to work on a vacation property at 4407 South Pass Road, Everson, Washington 98247, owned by Defendant and his wife, Defendant Laura Richard. Plaintiffs state that they do not have and did not claim to have licenses in any particular construction trades. Plaintiffs allege that Aaron Rivera had an oral contract with Richard, made in Harris County, Texas, for employment at $12 per hour, plus transportation to and from Washington State, food, and lodging, while the remaining Plaintiffs had an oral contract with Richard for $10 per hour, plus transportation, food, and lodging.

From October 10, 2009 until approximately November 8, 2009

Plaintiffs Rivera, Saavedra, and Montoya worked at least ten hours per day, performing manual labor on the ranch house on Defendants' property, including building a deck, tile work, refurbishing the interior of the house, and disposing of trash.  From approximately October 10, 2009 until October 29, 2009, Plaintiff Castillejos worked at least ten hours per day performing manual labor on the same kinds of jobs.  On October 29, 2009, Castillejos was injured on the job and unable to continue.

Plaintiffs assert that they worked exclusively on Richard's property and that Richard supervised and instructed them how to perform each construction task.  He controlled their hours and provided all materials and most of the tools (paint sprayers, tile cutters, surface sanders, and ladders) used on the project.

The lodging promised to Plaintiffs turned out to be the ranch house under construction, which had no running water or beds, and only two or three times during their employment and only after they had frequently complained were Plaintiffs taken to a nearby river to bathe.[6]  Moreover, they were only fed half of their promised meals, which consisted mainly of eggs, bologna, and water.  Although Richard drove them from Texas to his Washington State property, he did not offer to take them back.

They complain that Richard failed to compensate them properly

---

[6] In their memorandum supporting their motion for summary judgment they state that Richard took them to "some sort of public restroom to shower."  #15-1 at 3.

for the regular and overtime hours that they spent working on Defendants' property.  Specifically they contend that pursuant to the oral contracts and in addition to transportation to and from Washington State, food, and lodging, Defendants were entitled to the following:  Defendant Rivera was employed at $12 per hour, worked at least 170 regular hours and 120 overtime hours, for a total of $4,200, but received only $1,600, with a balance of $2,600 owing; Defendants Saavedra and Montoya were each employed at $10 per hour for a total of at least 170 regular hours and 120 overtime hours, for a total of $3,500 each, but each was paid only $1,500, with a balance of $2000 each still owed; and Defendant Castillejos, also employed at $10 per hour, worked at least a total of 130 regular hours and 70 overtime hours for a total of $2,350, but was paid only $1,200, with a balance of $1,150 still owed.  If there is a question of fact regarding the rate contracted for, they request that Washington State's minimum wage of $8.25 be used to compute their compensation; or if there are fact questions as to both rates, that the minimum wage under FSLA be used.

### IV.  Plaintiffs' Motion For Summary Judgment (#15)

With supporting affidavits from each supporting his claim, Plaintiffs request summary judgment on their claims for unpaid regular and overtime work on Defendants' property in Washington State.  They maintain that they are "employees" and Defendants are "employers" within the meaning of the FSLA. Applying the "Economic

Reality Test," they insist that Defendants maintained control over Plaintiffs while they worked exclusively at Defendants' property, with Richard supervising and instructing them how to perform each task required on the construction project.  All materials and most tools were provided by Defendants.  Richard controlled the hours each Plaintiff worked.  Plaintiffs did not invest any of their own money for construction repairs and had no opportunity for profit and loss.  They did and do not have any independent skill nor licenses in particular construction trades nor initiative to indicate that they were independent contractors and they did not represent that they had a business of their own of any type. Their employment relationship with Defendants was temporary, lasting only a few weeks.  They were economically dependent on Defendants.

## A.   *Defendants' Response (#20)*

Defendants respond that they had no employment relationship with Plaintiffs and that there are fact issues regarding whether Plaintiffs are "employees" or are "independent contractors" not subject to the FLSA.  They attach a supporting affidavit from Defendant Laura Richard stating that she "never met the Plaintiffs . . . never entered into any contractual agreement whereby Plaintiffs were to make improvements" to the property at her request, that she "never supervised, directed or requested that Plaintiffs perform any trade" on her behalf, nor did she "ever

exercise any control over any improvements Plaintiffs alleged to have been performed" by them.  The Court observes that Plaintiffs never alleged that she had; rather their allegations centered on her husband.

Plaintiffs also submit an affidavit from Defendant James Richard, contradicting Plaintiffs' allegations; Richard subsequently amended that affidavit and filed it as "Defendant's motion for summary judgment affidavit" (#26).  In essence Richard claims (1) that during their negotiations for the project he provided Plaintiffs with photographs of the house and the square footage; (2) that Plaintiffs agreed to a set price ($5,080) for the work as a whole and that they were not to be paid an hourly wage; (3) that Richard would transport them to Washington State and that the transportation would not be included in the set price; (4) that they would provide most of their own tools while he would provide a ladder, a spray painter, a sander, and a tile cutter; (5) that he did not control the details of their work; (6) that the work was temporary; (7) that they had represented to him that they were skilled tradesmen and not common laborers; and (8) that Plaintiffs were to be allowed to stay in the house they were working on although the parties knew it was not "fully furnished and in a mild state of disrepair."

## B.  *Plaintiffs' Objections and Magistrate Judge's Ruling*

Plaintiffs object to Richard's affidavit, essentially implying

that Richard's claim is not credible given that for twenty days of work they were paid "the princely sum of $5.17 to $5.52 cents an hour."  They emphasize that they are members of the class that Congress was attempting to protect with the FLSA.

United States Magistrate Judge Frances Stacy struck Richard's affidavit (#35) pursuant to an unanswered motion to strike from Plaintiffs (#27), complaining that the affidavit contained inadmissible hearsay and was vague.[7]

## C.  Court's Decision

This Court notes that parts of Richard's affidavits are not hearsay and are factually specific and made with personal knowledge and do raise genuine issues of material fact in this dispute.  As noted, "[o]n a motion for summary judgment, the district court should disregard only those portions of an affidavit that are inadequate and consider the rest."  *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992).  Even though the affidavit as a whole has been stricken by Judge Stacy, the Court finds granting summary judgment inappropriate where admissible portions of that affidavit establish material questions about the content of the oral agreements between Richard and Plaintiffs and the material facts relating to Plaintiffs' work performance.

Because the remaining motions all relate to the *res judicata*

---

[7] Judge Stacy also stated that Defendants' subsequent motion for summary judgment (#32) superseded #26.

defense raised by Defendants, the Court examines them together.

### V. Defendants' Motion for Summary Judgment (#32)

Defendants assert that this case is barred by the doctrine of *res judicata* because on November 19, 2009 Laura and James Richard (for purposes of the Washington State action, "the homeowners") filed a breach of contract claim against Defendants (for purposes of the Washington State action, "the "contractors") in Whatcom County District Court, in Washington State, No. CV09-2004. Eight days after the homeowners claim they served the contractors, the contractors filed suit against the homeowners in Harris County, Texas, alleging what was a compulsory counterclaim in the Washington State district court action. The homeowners removed the Harris County action to this Court based on the FLSA claim asserted by the contractors. On April 16, 2010, the homeowners filed a motion for default judgment in the Washington State breach-of-contract case and served a copy on the contractors' lawyer in Texas even though they were not required to do so. That same day the contractors' attorney told the homeowners' attorney that he would be seeking a restraining order against the homeowners in the Washington State suit. The parties then agreed to stay both proceedings temporarily, and that agreement was memorialized in writing. #12 in H-10-856. The homeowners filed a motion for a temporary stay in the Washington action pursuant to that agreement. Defendants claim that this Court declared the temporary stay

expired.[8]   On or about August 25, 2010, Magistrate Judge Stacy asked the contractors' lawyer if he wanted to consolidate the Washington and Texas suits, but the contractors' attorney declined. On September 9, 2010, when the contractors failed to appear for trial, the Washington State district Court granted the homeowners a final judgment against the contractors.  Ex. B to #32.

### A.   *Plaintiffs' (Contractors') Response (#39)*

With supporting documentation, Plaintiffs offer a different spin on the facts.  According to them, before the Washington State suit was filed, on or about November 13, 2009 the contractors, through their attorney, sent the homeowners a demand letter (Ex. A to #39) for unpaid wages and overtime for work performed for the homeowners.   Laura Richard responded,   indicating   that   the

---

[8] What Defendants are referring to was this Court's order of August 2, 2010 (#17), which was not intended to be a finding that the agreement was terminated.  The Court had been reviewing the file and observed that Defendants had never filed an answer to Plaintiffs' Amended Petition, which was filed in state court before removal, nor a response to Plaintiffs' pending motion for summary judgment, "despite the fact that any agreements stated in their Letter of Agreement has long since expired."  The Court made that statement because the Letter of Agreement on its face stated that the agreed stay would remain in effect until an Impasse Letter was filed," and that if a settlement conference scheduled in April 2010 did not resolve their differences, they would participate in a half day of mediation on May 21, 2010.  The Letter further stated that if the mediation was unsuccessful, the mediator would prepare an Impasse Letter to be filed with the Court, which would terminate the agreement to abate.  That date had long since passed, without any such letter being filed or with Defendants' filing of responses to Plaintiffs' petition and motion despite the time limits in the Federal Rules of Civil Procedure.  The Court was merely attempting to get this case back on track.

homeowners had received the demand letter and would answer after conferring with an attorney.  Ex. B to #39.  On November 20, 2009 the homeowners then filed their original petition (Exhibit C)in what the contractors characterize as a "retaliatory lawsuit," in violation of section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), in Washington State.  On December 1, 2009 the homeowners attempted to serve the contractors by mailing a copy of the petition to the contractors' attorney.  Ex. D.  The contractors' attorney informed the Whatcom County Clerk in Washington State by letter that he was not licensed in Washington and would not accept service on a Washington State lawsuit for anyone.  Ex. E.  The contractors contend that the homeowners never served them personally or by certified mail with a copy of the original petition as required by the Revised Code of Washington ("CW") and the Civil Rules of Limited Jurisdiction ("CRLJ").  Affidavits of Saavedra, Rivera, and Montoya, Exhibits F, G, and H, respectively.  On September 9, 2010, the homeowners obtained a default judgment in the "retaliatory" Washington State lawsuit.

On October 12, 2010, Laura and James Richard filed their motion for summary judgment in this action contemporaneously with their First Amended Answer to Plaintiffs' Amended Petition. Plaintiffs argue that Defendants failed to obtain leave of Court and did not ask Plaintiffs for written consent to file the Amended Answer, as required by the Federal Rules of Civil Procedure and the

Court's scheduling order.  The schedule's deadline for amending pleadings was October 31, 2010.  In addition, complain Plaintiffs, Defendants' motion for summary judgment is based on an affirmative defense that is not raised in the First Amended Answer.

Furthermore Plaintiffs object to specified statements in James Richard's affidavit, attached to the motion for summary judgment, for inadmissible hearsay, vagueness and ambiguity, and relevancy.

Plaintiffs make several arguments against Defendants' motion for summary judgment.  First, they argue that because the Washington State Court suit was instituted as an act of retaliation, after Plaintiffs sent Defendants a demand letter, Laura and James Richard should not be able to enforce or secure any benefits from violating the FLSA.  To prove that a state court suit is a prohibited act of retaliation, Plaintiffs must demonstrate that "(1) the suit was filed with a retaliatory motive, and (2) that the suit lacks a reasonable basis in fact or law." *Martinez v. Deaf Smith County Grain Processors*, 583 F. Supp. 1200, 1201 (N.D. Tex. 1984)(filing a state court suit could be a prohibited form of retaliation under § 15(a)(3) of FSLA; timing can be an indication of retaliatory motive; private litigant can seek injunctive relief for retaliation).  Plaintiffs point out that Defendants have not filed any counterclaim in this action.  In *Martinez*, after the plaintiff left defendants' employment and filed a FLSA claim, the defendant employer filed claims for breach of

-24-

contract and misrepresentation against the plaintiff in state court and obtained a judgment against the plaintiff.[9]   The court in *Martinez* opined that the parties should have known that a decision by it that a FLSA violation occurred would necessarily deprive the employer of its state-law claim for breach of contract and that the state court suit could be enjoined as an act of retaliation prohibited by § 15(a)(3) of FSLA.   583 F. Supp. at 1210. Plaintiffs here argue that a determination by this Court that a FLSA violation has occurred would deprive Defendants of a reasonable basis in law that their retaliatory suit would be enjoinable.   To protect Plaintiffs' federal rights, Plaintiffs urge the Court to enjoin any action to enforce or secure the benefits of the retaliatory suit until this case is resolved.   (This Court observes that since the state court judgment is final, this Court cannot enjoin it.)

Second, Plaintiffs, all residents of Houston, assert they did not participate in the Washington State suit because Defendants failed to serve them properly.

Third, under Washington CRLJ 4, "The summons must be . . . directed to the defendant requiring him to defend the action and to serve a copy of his appearance or defense . . . and to file a copy of his appearance or defense with the court."   Because Plaintiffs

---

[9] This suit is distinguishable because here the state court action was filed first, but after notice from Plaintiffs that they intended to sue Defendants.

were not served properly, the Washington State Court did not have competent jurisdiction when it rendered the judgment in favor of Defendants.  Plaintiffs also point out that although that judgment purports to grant relief. i.e., a declaration that the contractors' claims fail, such relief was not requested in the original complaint, and thus Plaintiffs' due process rights were violated by entry of the judgment.

Fourth, this case involves different claims, i.e., for regular and overtime wages under the FLSA.  Because they were not served, they did not assert their FSLA claim against Defendants.

Fifth, the Washington State judgment is void as a matter of law and must be set aside under Texas law[10] because of lack of jurisdiction and defective service of process, which violated the due process clause of the United States Constitution.  *See, e.g., DirecTV, Inc. v. Chan*, 2004 U.S. Dist. LEXIS 23286 (W.D. Tex. Nov. 16, 2003); *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 81 (1988)(concluding that because the return of service showed a defective service and the appellant had not been personally served, the judgment was void under Texas law).

Sixth, Defendants violated the terms of the letter agreement of April 19, 2010 to abate the Washington State action and not seek

---

[10] It is federal law, not Texas law, that applies in this action as this suit was removed to federal court under the FSLA, any state-law claims are superseded because they arise out of violations of the FLSA, and there is no diversity jurisdiction here as all parties are Texas residents.

a ruling on their motion for default judgment.[11]   Ex. I to #39.
Moreover, in the Amended Joint Report of the Meeting and Joint
Discovery/Case Management Plaint ("Joint Report"), Exhibit J, No.
20, Plaintiffs disclosed that they had an unfiled application for
temporary restraining order to preclude Defendants from continuing
the Washington State action and would file it if Defendants did not
abate the state court suit.   They charge that Defendants proceeded
to obtain a default judgment in the Washington State suit without

---

[11] Specifically in relevant part the letter, Ex. I, recites the
terms of the agreement as

   1.   James and Laura Richard ("Richard" or "Defendants")
   shall, in writing, request that the Whatcom County
   District Court abate and not rule upon the Motion for
   Default Judgment, and Richard shall not take any further
   action in the Whatcom County lawsuit, pending settlement
   discussions by the parties unless and until an impasse
   Letter is filed.
   2.   Crispin Saavedra, Bulprano Castillejos, Aaron Rivera
   and Jaime Montoya ("Plaintiffs"), by filing this Letter
   Agreement with the Federal District Court, request that
   the Court abate and not rule upon the pending Motion for
   Summary Judgment and Application for Temporary
   Restraining Order pending settlement discussions by the
   parties unless and until an impasse Letter is filed.
   3.   Parties agree not to file any motions, set any
   hearings or depositions, or request any discovery unless
   and until an impasse Letter is filed.
   4.   Plaintiffs and Defendants agree to hold a Settlement
   Conference on Friday, April 30, 2010 at 02:00 P.M. . . .
   5.   If the parties do not reach a settlement at the
   Settlement Conference, parties agree to mediate this
   dispute in a half-day mediation with the Harris County
   Dispute Resolution Center or a mutually agreeable
   mediator no later than May 21, 2010. If the mediation is
   unsuccessful, the mediator shall prepare an Impasse
   Letter to be filed with the Court, the filing of which
   will terminate the agreement to abate the motions set
   forth in Paragraphs 1, 2, and 3.

providing any notice to Plaintiffs.

**B.  Defendants' Response [Reply] (#43)**

Defendants observe that the contractors' "demand letter" (Ex. B to #43), attached to which was a contractor's lien warning notice that lists Plaintiffs as putative contractors and their addresses as Plaintiffs' lawyer's address, where the homeowners served their citation.  They claim, without supporting evidence, that the Washington State district court found that serving the attorney was effective service under Washington Civil Proc. Rule 4 because it was "reasonably calculated" to give notice under the circumstances. Exhibit B describes the professional services provided as "construction and renovation of existing house and deck."  It does not indicate the contractors were employees:  it is titled "Notice to "Owner," not notice to employer, and appears to assert a lien by contractors against the property.  Defendants claim they consulted a lawyer, Michael Elliott, who had owned a title company.  The homeowners complained that the contractors breached their contract, forcing the homeowners to hire four additional contractors. Elliott  told the homeowners that (1) because the contractors appeared to be attempting to place a lien on homeowners' real property, (2) because the witnesses were in Washington, and (3) because Washington state law controlled, the homeowners should file their breach of contract claim at the mandatory venue situs, Washington State.  The homeowners then did so in the Whitcom County

district Court on November 19, 2009.

Richard complains that the contractors rely on the demand letter but failed to include a copy of the lien attached to it. The letter and the lien appearing to place a lien on the property "spurred homeowners to action," not retaliation.  The Washington State court's final judgment found that the contractors to be in breach of a contract and that they were not employees, and expressly denied the compulsory FLSA counterclaim.[12]  At some point the contractors require a finding that they were employees for purposes of FSLA before a retaliatory suit (as a subset of FLSA) can apply, but such a finding has been extinguished by the final judgment which is entitled to full faith and credit under the United States Constitution.[13]   The contractors' remedy, insist

---

[12] Specifically the final judgment provides, "All relief not expressly granted herein by way of claim or counter claim is denied.   This necessarily includes any Defendant's claims (including FLSA, contract, etc.) arising out of work performed at 4407 South Pass Road, Sumas, Washington, 98295, October 10-November 8, 2009."  The judgment awarded to the homeowners money to cover their costs of hiring other contractors to perform the work, overpayment costs, and costs of court.

[13] U.S. Const., art. 4, sec. 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial proceedings of every other State.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.").
The Full Faith and Credit Clause is implemented by the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738 ("Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, Possession from which they are taken.").

Defendants, is to attack that judgment.  The Washington court ruled that contractors' claimed "federal rights" never existed. Furthermore, Defendants point out, Plaintiff contractors declined this Court's pre-judgment invitation to consolidate the two cases. Defendants charge that the contractors "knowingly ignored an active case and that case is now a Final Judgment." #43 at 6.  Thus *res judicata* applies and this case should be dismissed with prejudice.

Richard also submits an amended affidavit and a copy of the contractors' lien and of the Washington district court's final judgment.  #44.  Regarding the parties' agreement to temporarily stay both proceedings, that affidavit states that Richard "saw a Court order from the Federal Court that declared the temporary stay expired." #44 at 3.  *See* footnote 8 of this Opinion and Order.

**C.  *Court's Decision***

1.  Was service of process on the contractors deficient under Washington State's  long-arm statute?

The homeowners served the contractors by mailing service of process to their lawyer, who responded that he was not licensed in Washington and that he would not accept service on behalf of his clients.

A Washington Court can assert personal jurisdiction over an

---

A federal court must give to a state-court judgment the same preclusive effect it would have under the law of the state in which the judgment was rendered.  *Migra v. Warren City School District Bd. of Educ.*, 465 U.S. 75, 81 (1984), *citing Allen v. McCurry*, 449 U.S. 90 (1980).

out-of-state defendant if the plaintiff satisfies the long-arm statute and the assertion of jurisdiction meets the requirements of due process by comporting with traditional notions of fair play and substantial justice. *Ralph's Concrete Pumping, Inc. v. Concord Concrete Pumps, Inc.*, 154 Wash. App. 581, 584-85 (Wash. App. Div. 1 Feb. 22, 2010), *review granted*, 169 Wash. 2d 1029 (Wash. Oct. 6, 2010). Personal jurisdiction requires proper service of process; "'Mere receipt of process and actual notice alone do not establish valid service of process.'" *Id.* at 585, *quoting Haberman v. Washington Pub. Power Supply Sys.*, 109 Wash. 2d 107, 177, 744 P.2d 1032 (1987), 744 P.2d 1032 (Wash. 1987), *amended*, 109 Wash. 2d 107 (1988), *appeal dismissed*, 488 U.S. 805 (1988).

The Washington State long-arm statute, RCW 4.28.185(2) provides, "Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state." *Id.* RCW 4.28.180 in turn in relevant part requires personal service of summons or other process upon any party outside the state. Moreover RCWA 4.28.185(4) states, "Personal service outside the state shall be valid only when an affidavit is made and filed to the effect that service cannot be made within the state." *See, e.g., Haberman*, 109 Wash. 2d at 177-78 (Even though two out-of-

state defendants ultimately received notice of the lawsuit through service by leaving the summons and complaint outside the door of the defendant's home when no one was there and service on another defendant by mail or by leaving it at his place of business, service did not comply with the requirement of personal service or delivery of process to a person of suitable age or discretion at the defendant's home).  Statutes authorizing personal service upon parties out of state are in derogation of the common-law requirement of personal service within the jurisdiction of the court and are therefore strictly construed.  *Id.* at 178, *citing State v. Superior Court for Snohomish County*, 88 Wash. 612, 617, 153 P. 315 (Wash. 1915); *Haberman*, 109 Wash. 2d at 177.

RCWA 4.28.185(1) includes among acts submitting a person to jurisdiction of the Washington State courts "[t]he transaction of any business within this state."  To subject an out-of-state defendant to the *in personam* jurisdiction on the "transacts business" clause in 4.28.185(1),

> (1)  The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equity of the situation.

*Shute v. Carnival Cruise Line*, 113 Wash. 2d 763, 767, 783 P.2d 78,

80 (1989)(*en banc*).   Plaintiffs did purposefully travel to Washington to repair the Richards' vacation home and their claims arose from that activity.  As discussed, however, deficient service violates a defendant's right of due process.

It is undisputed that Plaintiffs were not personally served. CR 4(i)(1)(D) provides generally for alternative service on a nonresident defendant "by any form of mail, requiring a signed receipt, to be addressed and mailed to the party to be served." CR4(e)(1) states,

> Generally.  Whenever a statute or an order of court thereunder provides for service of a summons . . . upon a party not an inhabitant of or found within the state, service may be made under the circumstances and in the manner prescribed by the statute or order, or if there is no provision prescribing the manner of service, in a manner prescribed by this rule.

RCWA 4.28.185(2) states, "Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180 [the long arm statute] with the same force and effect as though personally served within the state."  Moreover, under 4.28.185(4), "[p]ersonal service outside the state shall be valid only when an affidavit is made and filed to the effect that service cannot be made within the state."  The long-arm statute, 4.28.180, titled "Personal service out of state," provides,

> Personal service of summons or other process may be made upon any party outside the state.  If upon a citizen or

> resident of this state or upon a person who has submitted
> to the jurisdiction of the courts of this state, it shall
> have the force and effect of personal service within this
> state; otherwise it shall have the force and effect of
> service by publication.  The summons upon the party out
> of state shall contain the same and be served in like
> manner as personal summons within the state, except it
> shall require the party to appear and answer within sixty
> days after such personal service out of the state.

*See also* Karl B. Teglund and Douglas J. Ende, 15A Wash. Prac.: Handbook on Civil Procedure § 10.7 (2010-11 ed.)("the long-arm statute requires that the respondent be *personally* served," citing RCWA 4.28.185(2)).[14]  Because the Washington State long-arm statute expressly provides only for personal service of process on an out-of-state defendant, but not for alternative service by mail or publication, CR 4(i)(1)(D) does not apply to service on out-of-state defendants since the condition of CR4(e)(1) is not satisfied. Service by mail is insufficient to confer personal jurisdiction on a nonresident defendant out-of-state.  *Ralph's Concrete Pumping*, 154 Wash. App. 581.  *See also Schell v. Tri-State Irrigation*, 22 Wash. App. 788, 789, 591 P.2d 1222, 1223 (Wash. App. Div. 3 1979)(jurisdiction is acquired only as provided by statute, and the long-arm statute is also limited by the due process clause). Moreover, even if it permitted service by mail, the mail was not

---

[14] The Handbook on Civil Procedure, *id.*, adds, "Although the long-arm statute specifies personal service, the statute does not require physical, hand-to-hand delivery of the summons and complaint to the defendant.  The courts have also approved of 'abode' service under the long-arm statute (leaving the papers at the defendant's place of abode).  *State ex rel. Coughlin v. Jenkins*, 102 Wash. App. 60, 7 P.3d 818 (Div. 2 2000)(dictum)."

sent to Plaintiffs:  service on their lawyer at his address was insufficient service of process.

"When a court lacks personal jurisdiction over a party, the judgment is void because the court lacked personal jurisdiction due to insufficient service of process." *Id.*, 154 Wash. App. at 590, *quoting Rodriguez v. James-Jackson*, 127 Wash. App. 139, 111 P.3d 271 (2005). Morever, a judgment entered without valid personal jurisdiction over a defendant violates due process. *Schell v. Tri-State Irrigation*, 22 Wash. App. 788, 789, 591 P.2d 1222, 1223 (Wash. App. Div. 3 1979).

2. *Res Judicata*, lack of personal jurisdiction, and default judgment

Defendants argue that Plaintiffs are barred by *res judicata* from pursuing this FSLA action and from challenging the validity of the Washington State final default judgment.

As noted, a default judgment entered against a party over whom the court lacks personal jurisdiction is void. *Ralph's Concrete*, 154 Wash. App. at 590.  Moreover the issues were never actually litigated in the Washington State court proceeding because Plaintiffs were not properly served and never appeared; thus they did not have a full and fair opportunity to contest them. Plaintiffs have presented convincing evidence that they were not served in accordance with the Washington State long-arm statute; indeed their attorney even notified the Washington State Court of

deficient service.   There is no evidence that Defendants ever attempted to cure the problem.

In *Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151 (5th Cir. 1974), the Fifth Circuit opined that under 28 U.S.C. § 1738, "federal courts are required to give full effect to the final judgments of state courts, subject only to narrowly circumscribed avenues of collateral attack." *Id.* at 153, *citing Midessa Television Co. v. Motion Pictures for Television*, 290 F.2d 203 (5th Cir. 1961).  Where the defendant has appeared in the prior state court suit, "the judgment in that cause is res judicata on the issue of personal jurisdiction, whether the defendant actually litigated the question or merely permitted it to pass without objection." *Id.*[15]   Nevertheless, if "the defendant makes no appearance and the judgment goes by default, the defendant may defeat subsequent enforcement in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction." *Id.* at 154, *citing Pardo v. Wilson Line of Washington, Inc.*, 134 U.S. App. D.C. 249, 414 F.2d 1145 (1969). The party challenging the judgment bears the heavy burden of proof. *Id. See also Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 395 (5th Cir. 2001)("joining the majority of circuits" in

---

[15]  The appellate court continued, "Defense to an adverse judgment on the basis of the failure of the rendering court to obtain jurisdiction of the person is therefore foreclosed, unless the law of the state in which judgment was rendered would honor such a collateral attack." *Id.*

holding "that a registering court may use Rule 60(b)(4)[16] to sustain jurisdictional challenges to default judgments issued by another district court")[17]; *Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730, 732-33 (2d Cir. 1980)[18]; *Budget Blinds, Inc. v. White*, 536 F.3d 244, 259-60 (3d Cir. 2008).  Washington State law is in accord with the Fifth Circuit.  *Market Northwest, Inc. v. Grand Soft*

---

[16] Rule 60(b)(4) authorizes the court to relieve a party from a final judgment "if the judgment was void."  There is no time limit for bringing a Rule 60(b)(4) motion.  *Jackson v. FIE Corp.*, 302 F.3d 515, 523-24 (5th Cir. 2002), *citing* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2698 at 164 (3d ed. 1998).

[17] The panel reasoned that despite concerns about judicial efficiency and comity among district courts, "such deference is less appropriate when the challenged judgment was issued without the benefit of argument from one party and the basis for the 60(b) challenge is jurisdictional."  260 F.3d at 395.  *But see Board of Trustees, Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034 (7th Cir. 2000)(holding that Rule 60(b) motions must be presented to the court that rendered the challenged judgment).

[18] In *Covington, id.* at 733-34, the Second Circuit opined,

A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.  When, in an enforcement proceeding, the validity of the judgment is questioned on this ground, the enforcing court has the inherent power to void the judgment, whether the judgment was issued by a tribunal within the enforcing court's domain or by a court of a foreign jurisdiction, unless inquiry in the matter is barred by the principles of rest judicata. . . . [In addition to asserting a collateral attack defensively as in opposition to an enforcement action], relief from a foreign judgment allegedly invalid for a lack of personal jurisdiction may be offensively pursued, either by way of an independent equitable action . . . . . or through a suit for declaratory relief. [citations omitted]

*Equipment Co.*, 95 Wash. App. 1044, No. 41969-2-I, 1999 WL 307222 (Wash. App. Div. 1 May 17, 1999)("Full faith and credit need not be given a judgment rendered by a court lacking personal jurisdiction over the defendant, and such judgment is subject to collateral attack in the foreign jurisdiction for want of jurisdiction of the rendering court."), *citing Wampler v. Wampler*, 25 Wash. 2d 258, 262-63, 170 P.2d 316 (1946), and *In re Estate of Tolson*, 89 Wash. App. 21, 30, 947 P.2d 1242 (1997).

Accordingly, the Court concludes that *res judicata* does not apply here and denies Defendants' motion for summary judgment.

### VI.  *Plaintiff's Motion to Strike*

### *Defendant's First Amended Answer (#37)*

Plaintiffs move to strike Defendants' First Amended Answer (#33) to Plaintiffs' Amended Petition (Under Notice of Removal, #1-1) on the grounds that Defendants never requested leave of court or Plaintiffs' written consent to file it.  They contend that Defendants should not be allowed to raise any affirmative defenses in their answer.

Defendants object that this matter is now barred by *res judicata,* as asserted in their motion for summary judgment.

Plaintiffs' filing of an amended petition entitles Defendants to file an amended responsive pleading.  The Court notes that following removal the parties entered into their Letter of Agreement for a temporary stay of the proceedings (#12), filed with

the Court on April 10, 2010.  Moreover, while the temporary stay was still in effect, according to docket entry #23 regarding the initial conference and scheduling order issued by Judge Stacy on September 8, 2010, amended pleadings were to be filed by October 31, 2010.  Defendants timely filed a "responsive pleading," i.e., a motion for summary judgment (#32), on September 10, 2010 and their amended answer (#33) on October 12, 2010, along with a superseding motion for summary judgment (#32).  Accordingly the Court denies the motion to strike.

### VII. Plaintiffs' Motion for Leave to File

### First Amended Complaint (#38)

Plaintiffs request leave to add a retaliation claim, alleging that Defendants filed a retaliatory lawsuit in Washington State district court under *Martinez*, 583 F. Supp. 1200, discussed earlier.

Defendants object that this action is barred by *res judicata*.

The Court has determined that *res judicata* does not apply to bar Plaintiffs' claims here.

*Martinez* is grounded in 29 U.S.C. § 215(a)(3), which provides in relevant part that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." The situation in this case is not on point with that in *Martinez* as

this Court cannot enjoin the Washington State suit that is no longer pending. *Martinez* does throw the spotlight on retaliatory claims and suits under the anti-retaliation provision. Section 215(a)(3) was amended in 1977 to permit employees to sue their employers for legal or equitable relief for violations of the anti-retaliation provision, *Bailey v. Gulf Coast Transportation, Inc.*, 280 F.3d 1333, 1336 (11th Cir. 2002). Previously only the Secretary of Labor could file suit on the aggrieved employee's behalf.

Courts have recognized that a lawsuit or counterclaim can constitute retaliation against a current or former employee under the anti-retaliation provision of the FSLA, 29 U.S.C. § 215(a)(3). *See e.g., Darveau v. Detecon, Inc.*, 515 F.3d 334, 340-44 (4th Cir. 2008)(relying on "the almost uniform practice of courts" in applying Title VII case law in interpreting comparable provisions in other federal statutes such as anti-retaliation provisions, holding that Darveau had stated a cognizable claim under FLSA when he alleged that his employer, without reasonable basis in law or fact, filed a retaliatory lawsuit against him for fraud), *citing Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1406-08 (10th Cir. 1992)(holding that an employer's third-party complaint for indemnity against four former employees could, as a matter of law, qualify as unlawful retaliation under the FSLA). *See, e.g., Munroe v. Partsbase, Inc.*, No. 08-80432-CIV., 2009 WL 413721, *7-9 (S.D. Fla. Feb. 18, 2009)(and numerous cases cited therein).

That Defendants filed their Washington State suit only after receiving Plaintiffs' demand letter raises but does not resolve questions about motive.  The Court therefore grants Plaintiffs' motion for leave to file First Amended complaint, without making any finding on whether it will survive a motion to dismiss under Rule 12(b)(6).

### VIII.   *Plaintiffs' Opposed Motion for Leave to File Supplemental Response (#40)*

Plaintiffs wish to supplement their response to Defendants' motion for summary judgment by submitting certified copies of the court records of the Washington State Court in which they argue that a void judgment was entered.  Without any evidence, Defendants conclusorily object that "it imposes undue delay, is in bad faith or dilatory motive, is symptomatic of a repeated failure to cure previous deficiencies, causes homeowners undue prejudice, and the futility of the amendment."

Because the charges are unsupported and because the Washington State court records aid the Court in evaluating the *res judicata* defense here, the Court grants the motion.

### IX.  *Defendants' Motion for Leave to Amend Answer (#46)*

In a motion filed on November 5, 2020, after the deadline for amending pleadings, October 31, 2010.  Defendants seek to amend to add *res judicata* as an affirmative defense and maintain there is no evidence of undue delay, bad faith or dilatory motive, repeated

failure to cure deficiencies, undue prejudice to Plaintiffs, or futility.

Plaintiffs object that the motion is untimely under the scheduling order and that Defendants failed to request written consent from them as required under Fed. R. Civ. P. 15(a). They argue also that justice would be better served if the Court denied the motion because it is based on a state court judgment that is void as a matter of law because of defective, indeed the absence of any attempt at, service. Because they were not served, Plaintiffs insist their fundamental rights to due process under the United States's, Washington's and Texas's Constitutions were violated. They also object that after they informed Defendants that they had prepared but not filed an application for a temporary restraining order to prevent Defendants from continuing to pursue the Washington suit, Defendants obtained a default judgment in that suit without notice to them. They reiterate their contention that the Washington action was filed in retaliation after Defendants received their demand letter in violation of § 15(a)(3) of the FLSA in support of their request that the motion for leave to amend be denied.

Because the Court has concluded that *res judicata* does not apply under the circumstances here, amendment would be futile and solely for that reason the Court denies the motion.

### X.  *Plaintiffs' Motion to Strike*

### *Defendants' Amended Affidavit (#50)*

The affidavit that is the target of this motion is #44. Because, as discussed, the Court can determine which parts of the affidavit are admissible, it denies the motion to strike.

### *XI.  Plaintiffs' Motion for Sanctions (#52)*

Plaintiffs seek sanctions against Defendants under Federal Rule of Civil Procedure 37(b)(2) for failure to obey United States Magistrate Judge Frances Stacy's order of October 5, 2010 (#30), granting Plaintiffs' motion to compel.  Plaintiffs assert that Defendants' responses to their requests were incomplete and insufficient.  As sanctions they ask the Court (1) to strike the Defendants' pleadings and enter a default judgment against them; (2) to prohibit Defendants from presenting any evidence (a) that Plaintiffs did not work for them for the dates and times alleged by Plaintiffs and (b) that Defendants retained any other person or company to perform repairs on the property in dispute; or (3) hold Defendants in contempt.  They also ask that Defendants be required to pay reasonable expenses, including attorney's fees, in the amount of $1,500, caused by their failure to comply with the order.

Defendants respond that they have provided eighty-eight pages of discovery to Plaintiffs.  They complain that Plaintiffs did not make a reasonable inquiry under the circumstances and did not inform Defendants until Plaintiffs filed this motion that they were missing anything in discovery.  Defendants object that they could

not send items they did not have, in particular the lease agreement, nor do they have other items identified in the motion for sanctions.

If Defendants do not have the records Plaintiffs request, they cannot provide them, so the Court denies the motion.

### Court's Order

For the reasons stated above, the Court

ORDERS the following:

(1)  Plaintiffs' motion for summary judgment (#15) is DENIED;

(2) Defendants' motion for summary judgment for *res judicata* (#32) is DENIED;

(3) Plaintiffs' motion to strike Defendants' First Amended Answer to Plaintiffs' Amended Petition for failure to ask for leave to amend (#37) is DENIED;

(4) Plaintiffs' motion for leave to amend First Amended Complaint (#38) is GRANTED;

(5) Plaintiffs' motion for leave to file supplemental response to Defendants' motion for summary judgment (#40) is GRANTED;

(6) Because the Court has ruled that *res judicata* does not apply, Defendants' motion for leave to amend first amended answer (#46) to add that defense is DENIED as futile;

(7) Plaintiffs' motion to strike Defendants' amended affidavit in response to Plaintiffs' motion for summary judgment (#50) is DENIED; and

(8) Plaintiffs' motion for sanctions for failure to obey court order (#52) to produce all non-privileged documents responsive to discovery requests is DENIED.

**SIGNED** at Houston, Texas, this  3rd  day of  March , 2011.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE